USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/20/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JESSICA DIAZ,                                           :
                                                       :
                    Plaintiff,                         :          **OPINION &**
                                                       :          **ORDER**
-v-                                                    :
                                                       :
KILOLO KIJAKAZI[1]                                     :          20-CV-10346 (JLC)
Acting Commissioner of Social Security,                :
                                                       :
                    Defendant.                         :
                                                       :
-----------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Jessica Diaz seeks judicial review of a final determination made by Kilolo

Kijakazi, the Acting Commissioner of the Social Security Administration, denying

her application for disability insurance benefits under the Social Security Act.  The

parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  For the reasons set forth below, Diaz's motion

is denied, the Commissioner's cross-motion is granted, and the case is dismissed.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this action.

# I.   BACKGROUND

## A. Procedural History

Diaz filed an application for Disability Insurance Benefits ("DIB") on June 19, 2018, alleging a disability onset date of October 8, 2018. [2]  Administrative Record ("AR"), Dkt. No. 15, at 21.[3]  The Social Security Administrative ("SSA") denied her claim on August 1, 2018.  *Id.* at 108.  Diaz requested a hearing before an Administrative Law Judge ("ALJ") on October 16, 2018.  *Id.* at 114.  On September 10, 2019, Diaz, represented by counsel, appeared and testified before ALJ Zachary S. Weiss.  *Id.* at 41.  The ALJ denied Diaz's application on February 3, 2020.  *Id.* at 15.  The Appeals Council denied Diaz's request for review on October 15, 2020, rendering the ALJ's decision final.  *Id.* at 1.

Diaz timely commenced this action on December 8, 2020, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  *See* Complaint ("Compl."), Dkt. No. 1.  The Commissioner answered Diaz's complaint by filing the administrative record on August 23, 2021.  Dkt. No. 15.  On October 18, 2021, Diaz moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Motion for Summary Judgment, Dkt. No. 16; Memorandum of Law in Support Plaintiff's Motion for Summary Judgment on the

---

[2] Diaz's original alleged onset date was April 3, 2018, but was updated to October 8, 2018, with the ALJ's permission.  *See* AR at 18, 45, 286, 323.

[3] Unless otherwise specified, the page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

Pleadings ("Pl. Mem."), Dkt. No. 17.[4]  The Commissioner cross-moved for judgment

on the pleadings on April 7, 2022 and submitted a memorandum in support of her

motion.  Notice of Motion, Dkt. 24; Memorandum of Law in Support of Defendant's

Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion

for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 25.  No reply papers were

filed.  Dkt. No. 26.

### B. Administrative Record

#### 1. The Hearing Before the ALJ

The hearing was held in the Bronx before ALJ Weiss on September 10, 2019.

AR at 43.  Diaz appeared in person and was represented by her attorney, Jennifer

A. Giovannetti.  *Id.*  Vocational Expert ("VE") Marian R. Morocco and Medical

Expert Dr. John Kwock participated by phone.  *Id.* at 44.

At the time of the hearing, Diaz was 46 years old and lived in an apartment

in the Bronx with her 30-year-old son.  *Id.* at 1, 48.  The highest level of education

she received was an associate degree.  *Id.*  Diaz testified that she had not worked

since October 8, 2018, but that she continued to look for part-time paralegal work

until about March or April 2019.  *Id.* at 50.  At some point she received a part-time

offer from a law firm that had the potential to be converted to a full-time position,

although at the hearing, Diaz testified that she had no expectation of going back to

work.  *Id.* at 50–51.

---

[4] Diaz called her motion a "Motion for Summary Judgment on the Pleadings," which
the Court understands to be and analyzes as a motion for judgment on the
pleadings.

Testimony revealed that Diaz suffers from carpal tunnel syndrome, degenerative disc disease, depression, and breast cancer.  AR at 43–44, 46–47, 56, 64, 74.  She underwent a carpal tunnel release surgery in her right hand in February 2017, after which she was out of the office for two weeks before returning to work.  *Id.* at 52.  She took approximately three months to recover from her first surgery and remained in her position full-time until she underwent a carpal tunnel release surgery on her left hand on October 9, 2018.  *Id.* at 52–53.  She was still recovering from her second surgery at the time of the hearing.  *Id.* at 53.  After her first carpel tunnel release, Diaz avoided lifting and could no longer type as fast as she was previously able.  *Id.*  When examined by her attorney, Diaz testified that with regard to tasks such as cooking, cleaning, and laundry, she does what she is "able to do," but that her son "does most of it."  *Id.* at 48.

Diaz described the way her physical impairments limited her daily activity and caused her pain.  For example, she testified that due to her carpal tunnel syndrome, she is only able to hold a cup of coffee using both hands.  *Id.* at 55.  Her hands cause her extreme pain, and although she takes medication that drastically brings her pain level down (to no pain in her right hand, and to a level two or three in her left), the medication makes her tired.  *Id.* at 57.  Because of her lumbar problems, Diaz testified that she can only sit for about 15 or 20 minutes and can only walk one full block before she starts to experience pain.  *Id.* at 58.  Diaz also testified to experiencing depression and anxiety that cause her to lose sleep.  *Id.* at 55–56.

The ALJ also questioned Dr. Kwock, an impartial medical expert. *Id.* at 63. Dr. Kwock had reviewed Diaz's medical record and testified that she had mild degenerative disc and joint diseases in the lumbar spine and was "status post" bilateral carpal tunnel release. *Id.* at 64. With respect to Diaz's carpal tunnel syndrome, Dr. Kwock explained that both of Diaz's hands retained a fair amount of functionality. *Id.* She was still able to zip, button, and tie with both hands without difficulty. *Id.* at 65. He explained that with respect to Diaz's right hand, her post-surgical "EMG" studies confirmed mild abnormalities due to carpal tunnel syndrome, and her clinical examinations produced negative "provocative test[ing]" and demonstrated no loss of dexterity. *Id.* at 67, 69. With respect to Diaz's lumbar spine, Dr. Kwock explained that her MRIs reflected degenerative changes that were not atypical for an individual of Diaz's age, and thus were not inconsistent with the ability to perform light work. *Id.* at 74–75. With respect to Diaz's left shoulder, Dr. Kwock explained that Diaz was not precluded from overhead reaching because her shoulder symptoms were improved and she had a full range of motion. *Id.* at 77.

In Dr. Kwock's opinion, Diaz could perform light work, including lifting and carrying up to ten pounds frequently and 11 to 20 pounds occasionally, and she could sit and stand or walk for six hours of an eight-hour workday. *Id.* at 65. He further opined that Diaz could do frequent overhead reaching and was not otherwise limited in her ability to reach, push, and handle. *Id.* She could occasionally use her left hand for feeling and fingering, and she was unlimited in

5

her right hand.  *Id.* at 66.  The limitation on feeling and fingering would preclude her ability to type more than two hours a day.  *Id.*

After Dr. Kwock's testimony, the ALJ questioned the VE.  *Id.* at 82.  The ALJ provided the VE with the following hypothetical situation: an individual who was the same age as Diaz and

> the same educational background, who can speak, read
> and write English as defined in our regulations.  I would
> ask you to further assume the hypothetical individual
> could do light work, except overhead reaching with both
> hands would be frequent.  Handling with both hands will
> be unlimited.  Fingering and feeling with the right hand,
> which is the dominant hand, would be unlimited.  With
> the left hand, fingering and feeling would be occasional.

*Id.* at 82.  The VE testified that such an individual could not perform Diaz's past work, but that the individual could perform the jobs at the "light exertional level," specifically the jobs of furniture rental clerk, school bus monitor, and a conveyor line bakery worker.  *Id.* at 83.  If this hypothetical individual was further limited to sedentary work, the VE testified, such an individual could perform the jobs of call out operator and security system monitor, but that these jobs would require frequent use of the left hand, as opposed to occasional.  *Id.* at 84–85.  The VE also testified that all of these jobs would be available even if the hypothetical individual was further limited to only occasional overhead reaching, instead of frequent.  *Id.* at 85.

### 2. Relevant Medical Evidence

In her motion, Diaz has provided a summary of the medical evidence

contained in the administrative record.  Pl. Mem. at 5–15.[5]  The Commissioner also

provided a summary of medical evidence contained in the administrative record.

*See* Def. Mem. at 3–14.  Having examined the record, the Court adopts the parties'

summaries as accurate and complete for purposes of the issues raised in this action.

*See, e.g., Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at *1

(S.D.N.Y. July 24, 2020) (adopting parties' medical opinion summaries), *adopted sub*

*nom. Thomas v. Comm'r of Soc. Sec.*, 2020 WL 4731421 (Aug. 14, 2020).

The Court will discuss the medical evidence pertinent to the adjudication of

this case in Section II.B below.

### 3. The ALJ's Decision

The ALJ denied Diaz's application in a 17-page decision on February 3, 2020.

AR at 15.  In doing so, he concluded that Diaz was not disabled under sections

216(i) and 223(d) of the Social Security Act from October 8, 2018 through February

3, 2020, the date of the decision.  *Id.* at 34.

At the first step of the sequential evaluation, the ALJ determined that Diaz

did not engage in substantial gainful activity after the alleged onset date of October

8, 2018.  *Id.* at 21.  Proceeding to the second step, the ALJ concluded that Diaz had

the following severe impairments: status post carpal tunnel release, degenerative

---

[5] For all references to Diaz's motion papers, the page numbers cited refer to the
ECF filing number.

disc disease, and asthma. *Id.* at 21. In this portion of the analysis, the ALJ considered evidence of Diaz's Generalized Anxiety Disorder, Major Depressive Disorder, mastectomy, and history of shoulder impingement and found that they were not severe impairments. *Id.* at 21–22. The ALJ also concluded that Diaz's impairments, considered singularly or in combination, did not satisfy any impairment listed in 20 CFR, Part 404, Subpart P, Appendix 1. *Id.*

Considering the entire record, including evidence of Diaz's severe and non-severe impairments, the ALJ found that Diaz had the residual functional capacity ("RFC") to perform light work except that she "could only reach overhead with both hands frequently and can only occasionally handle and finger with both hands. She should not be exposed to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gasses pulmonary irritants, or ventilation." *Id.* at 23–24. In arriving at this determination, the ALJ considered all of Diaz's symptoms as she testified to them at the hearing, as well as the medical exams and treatments notes in the record. *Id.* at 24–32. Over eight pages, the ALJ discussed in detail the findings in the medical records, the different doctors who treated or reviewed Diaz's records, and which opinions he found to be persuasive and why. *Id.*

At the fourth step, the ALJ determined that Diaz could not perform her past relevant work as a supervisor or paralegal in a law firm. *Id.* at 32. Finally, at the fifth step, the ALJ found that given Diaz's age, education, and work experience, as well as her RFC for a wide range of light work, there are jobs that exist in significant numbers in the national economy that Diaz can perform, such as usher,

8

investigator, counter clerk, furniture rental consultant, call out operator, and surveillance system monitor.  *Id.* at 32–33.

## II.   DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court

"must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

## 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim." *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)). Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner establishes whether the claimant is presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *See id.*; 20 C.F.R. § 404.1520(d).

12

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. *Pratts*, 94 F.3d at 37 (citing 20 C.F.R.

§§ 404.1512(d)–(f).  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."  *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g.*, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in

determining whether a claimant is disabled under the [Social Security] Act." *Pena*

*ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation

marks omitted).  For Supplemental Social Security Income and Social Security

Disability Insurance applications filed prior to March 27, 2017, SSA regulations set

forth the "treating physician rule," which required an ALJ to give more weight to

the opinions of physicians with the most significant clinical relationship with the

plaintiff.  20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2); *see also, e.g.*, *Taylor v.*

*Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule,

an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if he

determined that a treating physician's opinion was not entitled to "controlling

weight," or at least "more weight," than the opinions of non-treating and non-

examining sources. *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In

addition, a consultative physician's opinion was generally entitled to "little weight."

*Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the

evaluation of medical opinion for claims filed on or after March 27, 2017 (such as

Diaz's claim in this case). *See* REVISIONS TO THE RULES REGARDING THE EVALUATION

OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In

implementing new regulations, the SSA has apparently sought to move away from a

perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b). Under the new regulations, the ALJ must "explain how he considered" both the supportability and consistency factors, as they are "the most important factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors). Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v.*

*Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10

(S.D.N.Y. Jan. 29, 2021) *adopted*, 2022 WL 717612 (Mar. 10, 2022).  With regard to

consistency, "the new rules provide that the greater the consistency between a

particular medical source/opinion and the other evidence in the medical record, the

stronger that medical opinion becomes."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base

decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but

need not explicitly discuss, the three remaining factors (relationship with the

claimant, specialization, and other factors tending to support or contradict a

medical opinion).  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[W]hen the

opinions offered by two or more medical sources about the same issue are both

equally well-supported . . . and consistent with the record . . . but are not exactly the

same, the ALJ [should] articulate how he considered the remaining factors in

evaluating the opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8

(W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal

quotations removed).

Courts considering the application of the new regulations have concluded

that "the factors are very similar to the analysis under the old [treating physician]

rule."  *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp.

3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting

cases) ("the essence of the rule remains the same, and the factors to be considered in

weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted*, 2021 WL 134945 (Jan. 14, 2021) (remanding so ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions"). "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265). However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v.*

*Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v.*

*Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.  Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to

deference by a reviewing court.  *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006

WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "[A]s with any finding of fact, '[i]f the

Secretary's findings are supported by substantial evidence, the court must uphold

the ALJ's decision to discount a claimant's subjective complaints.'"  *Id.*  (quoting

*Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still,

an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to

permit intelligible plenary review of the record."  *Pena*, 2008 WL 5111317, at *10

(internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–

61 (2d Cir. 1988)).  "The ALJ must make this [credibility] determination 'in light of

the objective medical evidence and other evidence regarding the true extent of the

alleged symptoms.'"  *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.

1984)).

SSA regulations provide that statements of subjective pain and other

symptoms alone cannot establish a disability.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d

Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  The ALJ must follow a two-step

framework for evaluating allegations of pain and other limitations.  *Id.*  First, the

ALJ considers whether the claimant suffers from a "medically determinable

impairment that could reasonably be expected to produce" the symptoms alleged.

*Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record."  *Id.* (citing 20 C.F.R. § 404.1529(a)).  The kinds of evidence that the ALJ must consider (in addition to objective medical evidence) include:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).  The ALJ need not list "each of the seven factors" in his decision, as long as it shows he evaluated claimant's credibility "by considering all of the relevant evidence."  *See, e.g., Lane v. Saul*, No. 18-CV-5523 (PGG) (OTW), 2020 WL 3965257, at *9 (S.D.N.Y. Mar. 16, 2020) (citation omitted), *adopted by* 2020 WL 1876325 (Apr. 15, 2020).

### B. Analysis

Diaz contends that her case should be remanded because the ALJ failed to properly evaluate her breast cancer treatment and obesity, did not properly determine her RFC, and did not sufficiently consider her subjective complaints. Pl. Mem. at 16, 18, 20. The Commissioner counters that the ALJ adequately considered Diaz's breast cancer and obesity, properly determined the RFC, and sufficiently considered her subjective symptoms. Def. Mem. at 18–19, 24. For the following reasons, the Court agrees with the Commissioner.

### 1. The ALJ Properly Evaluated Diaz's Breast Cancer Treatment and Obesity

Diaz contends that the ALJ did not conduct "a proper evaluation or consideration" of her breast mastectomy and reconstruction relating to her breast cancer, and did not properly consider her obesity. Pl. Mem. at 17. Diaz goes on to argue that because the ALJ failed to consider her breast cancer treatment and obesity, he failed to properly consider the "combined effects" of her impairments when determining her RFC. *Id.* at 18.

### a. Breast Cancer Treatment

Diaz asserts that her breast mastectomy and reconstruction should be considered severe impairments at the second step of the ALJ's evaluation. *Id.* at 18. Citing to medical evidence in the record that chronicles her breast cancer diagnosis and treatment process between July and September 2019, she argues that the ALJ failed to analyze or consider her breast mastectomy and reconstruction in his decision. *Id.* at 18–19. An impairment or combination of impairments is "severe"

21

within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See, e.g., Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 529 (S.D.N.Y. 2019) (citing SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1520(c)). "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (cleaned up). Here, the ALJ analyzed Diaz's bilateral mastectomy and reconstruction and determined that even considering the new evidence she provided, she did not have an "impairment or combination of impairments that meets or medically equals the severity" of a listed impairment. *See* AR at 22.

Diaz was diagnosed with Stage 1 breast cancer on July 1, 2019 and received a mastectomy and reconstruction shortly thereafter. *Id.* at 679, 701. Both procedures appear to have gone well according to the postoperative visit on September 3, 2019, the report of which states no "invasive carcinoma" and that the "sentinel lymph nodes appear negative." *Id.* at 887. The report also observes that Diaz felt "well," that her "pain control [was] adequate," and that the "incisions" were healing. *Id.*

Diaz conceded that the breast cancer itself was a non-severe impairment in a post-hearing brief she submitted to the ALJ on September 24, 2019. *Id.* at 283. However, she now asserts that the resulting bilateral breast mastectomy and reconstruction should be considered severe impairments. Pl. Mem. at 18. In addition to failing to provide any authority in support of her argument, Diaz has not pointed to evidence in the record demonstrating how her bilateral mastectomy and

22

reconstruction are severe impairments, outside of a cursory allegation to that effect.

Breast cancer is plainly a serious condition, but pointing to breast cancer and any

related procedures alone is insufficient to establish it as a "severe impairment"

without evidence of its current impact on Diaz's life. *See, e.g. Bonilla Mojica*, 397 F.

Supp. 3d at 530 (ALJ's conclusion that impairments were non-severe supported by

record where beyond diagnosis "there was virtually no evidence that [the]

impairments caused more than an minimal effect on [plaintiff's] ability to perform

basic work activities").

　　　　Moreover, the ALJ sufficiently considered Diaz's breast cancer treatment.

The ALJ directly addressed her breast cancer treatment records by evaluating and

finding that they demonstrated that she had no evidence of invasive carcinoma post

operation, her sentinel lymph nodes appeared negative, she had adequate pain

control, and was "doing well."  AR at 22 (referring to *id.* at 882–87).  The ALJ also

evaluated the treating source statement from Dr. Scott Newman, the doctor who

carried out the reconstructive portion of Diaz's mastectomy.  *Id.* at 32 (referring to

*id.* at 907).  The entirety of Dr. Newman's September 11, 2019 statement is as

follows:

> Jessica Diaz is currently under my care for an on-going
> medical issue.  She was seen in my office and I advised her
> to refrain from work. Jessica will be seen in my office on
> Monday, September 16th to re-evaluate her return to work.
> If you have any questions or concerns, please feel free to
> contact me at any of the numbers below.

*Id.* at 907.  The ALJ observed that the opinion provided neither any information

about the length of Dr. Newman's treating relationship with Diaz, nor a functional

assessment of Diaz's conditions. *Id.* at 32.[6] As a result, the ALJ found Dr. Newman's statement "non-persuasive." *Id.* Because the ALJ based his determination of the severity of Diaz's breast cancer treatment on both her medical record and an evaluation of medical opinions, he did not err in determining Diaz's breast cancer treatment was not severe.

On March 2, 2020, after the ALJ issued his decision, Diaz submitted additional evidence from Dr. Newman. *Id.* at 95. In this letter, Dr. Newman stated that Diaz "will require further reconstructive procedures although the type and complexity remain to be determined. A minimum of three additional procedures will be necessary, each with varying recovery times." *Id.*

The Appeals Council reviewed this evidence and determined that it did not relate to the period at issue (prior to February 3, 2020) and advised Diaz that she would need to submit a new application for benefits. *Id.* at 2. The Appeals Council need only review new evidence if the plaintiff demonstrates "'good cause' for not submitting the evidence to the ALJ and that the additional evidence is 'new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'" *Simon v. Berryhill*, No. 16-CV-4088 (FB), 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017) (quoting 20 C.F.R. § 404.970(a)(5), (b)). The

---

[6] Moreover, Dr. Newman's opinion required Diaz to return to his office to "re-evaluate her return to work" on September 16, 2019. *Id.* at 907. He provided no information regarding what he would consider when making this evaluation nor did he specify if this would be a recommendation for a temporary leave or if he was advising her to refrain from working permanently.

evidence Diaz presented is new and she had good cause for not submitting it before the ALJ issued his decision because Dr. Newman issued the letter only after the ALJ's decision.  However, the Appeals Council was correct not to consider it because it does not in fact relate to the period at issue.  AR at 2.  Although the "reconstructive procedures" that Dr. Newman predicts Diaz will need are as a result of her breast cancer, they are procedures she had not yet had, and the effects of which were not known at the time.  Accordingly, it did not relate to the period considered by the ALJ and the Appeals Council did not err in declining to consider it.  *See, e.g.*, *David S. v. Comm'r of Soc. Sec.*, No. 20-CV-1392 (DJS), 2022 WL 2869602, at \*9 (N.D.N.Y. July 21, 2022) (Appeals Council had substantial evidence to find new medical opinion not relevant to ALJ review period where time frame covered by new opinion was "vague").

### b.  Obesity

Diaz also contends that the ALJ overlooked her obesity when assessing her RFC.  Pl. Mem. at 18.  Although the ALJ did not discuss Diaz's obesity in his evaluation, remand is not warranted on this basis.  "Obesity is not in and of itself a disability," and courts have held that "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  *See, e.g., Guadalupe v. Barnhart*, No. 04-CV-7644 (HB), 2005 WL 2033380, at \*6 (S.D.N.Y. Aug. 24, 2005) (citations omitted).  An ALJ should consider whether a plaintiff's obesity, "in combination with other impairments, prevents a [plaintiff] from working."  *Id.*  However, "the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other

impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." *Battle v. Colvin*, No. 13-CV-547 (JTC), 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014) (citation omitted).

Here, although multiple medical examiners noted Diaz's weight and height in their records, they did not suggest that Diaz had any limitations related to obesity and neither does Diaz point to any limitations as a result of her obesity. *See, e.g.,* AR at 464, 469, 685, 701, 714, 891. Thus, the ALJ's failure to address Diaz's obesity does not warrant remand. *See, e.g., Bonilla-Buhari v. Berryhill*, 357 F. Supp. 3d 341, 353 (S.D.N.Y. 2019) (ALJ did not err in not addressing plaintiff's obesity when her medical sources did not attribute plaintiff's impairments to her weight); *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) (where record is "devoid" of evidence that obesity limited plaintiff's functioning, an ALJ's failure to address obesity does not warrant remand).

### 2.  Substantial Evidence Supports the ALJ's RFC Determination

Diaz contends that this case warrants remand because the ALJ incorrectly assessed the RFC as he failed to consider the "totality" of her manipulative limitations, did not conduct a function-by-function analysis of her work-related abilities required by Social Security Ruling 96-8p, and gave the opinion of consultative examiner Dr. John Fkiaras insufficient weight. Pl. Mem. at 19. The

Court disagrees, and concludes that the ALJ's RFC determination is supported by substantial evidence for the following reasons.

### a. The ALJ Conducted a Function-by-Function Analysis of Diaz's Work-Related Abilities

In determining the RFC, the ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mongelli v. Comm'r of Soc. Sec.*, No. 20-CV-8340 (ALC), 2022 WL 1094765, at *10 (S.D.N.Y. Apr. 12, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). These functions include "physical (standing, sitting, walking, lifting, carrying, pushing, pulling), mental (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be affected by impairments (seeing, hearing, ability to tolerate environmental factors)." *Id.*; *see also* 20 C.F.R. § 404.1545(b)–(d); 20 C.F.R. § 416.945. Failure to make an "explicit" function-by-function analysis does not "per se" warrant remand. *See e.g., Gomez v. Saul*, No. 19-CV-4708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013)). "However, 'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki*, 729 F.3d at 177).

Here, the ALJ evaluated Diaz's limitations on a function-by-function basis. In determining that she could perform light work, AR at 23, the ALJ separately

analyzed the following impairments: the impact of carpel tunnel syndrome on the use of both hands (*id.* at 25–27); the impact of degenerative disc disease in lumbar spine on standing, sitting, and walking (*id.* at 27–28); and the impact of asthma on Diaz's respiratory functions (*id.* at 28).  The ALJ considered how each of these impairments would separately affect her ability to work.  The ALJ also supplemented his analyses with a close review of additional evidence Diaz submitted after the hearing—namely Diaz's breast cancer treatment records and additional physical therapy and examination records of Diaz's wrists—and concluded that findings from the new evidence were consistent with his RFC determination.  *Id.* at 28–29.  Therefore, the ALJ provided a sufficient function-by-function analysis.

### b.  The ALJ Properly Determined that Dr. Fkiaras' Medical Opinion was Unpersuasive

Diaz contends that the ALJ did not adequately consider the report of Dr. Fkiaras, the consultative examiner, who opined that she had a "moderate to marked limitation for any repetitive heavy lifting, carry, pushing, and pulling."  Pl. Mem. at 19.  Diaz contends that this report undermines the ALJ's finding of a lesser limitation of frequently reaching overhead with both hands and only occasionally handling and fingering with both hands.  *Id.*; *see also* AR at 23.

As an initial matter, Dr. Fkiaras' assessment of Diaz's limitation is not inconsistent with the RFC.  Dr. Fkiaras did not limit Diaz's ability to reach, and further, his examination notes include that Diaz has "full rotary movement bilaterally," and a full range of motion of her lumbar spine, shoulders, elbows,

wrists, hips, knees, and ankles, all bilaterally.  AR at 372.  The ALJ's RFC does not contradict this assessment.

Second, even if Dr. Fkiaras' opinion was inconsistent with the RFC, the ALJ properly found that Dr. Fkiaras' medical opinion was unpersuasive because "the findings of moderate to marked limitations are not well supported by the examination, and the degree of limitation is not well defined."  *Id.* at 31.  When evaluating a medical opinion for consistency, an ALJ should discredit portions of the consultative examiner's conclusions, if those portions are inconsistent with examiner's own findings.  *See, e.g., Mark H. v. Comm'r of Soc. Sec.*, No. 18-CV-1347 (ATB), 2020 WL 1434115, at *8 (N.D.N.Y. Mar. 23, 2020) (citing *Cruz v. Colvin*, 13-CV-723 (MAD) (TWD), 2014 WL 4826684, at *14 (N.D.N.Y. Sept. 29, 2014).  As noted, Dr. Fkiaras observed that Diaz generally had a full range of motion throughout her body.  AR at 372.  In addition, the ALJ stated that the only "abnormal" findings in Dr. Fkiaras' opinion were "4/5 grip strength, tenderness to palpitation along the lumbar spine and some decreased flexion in the lumbar spine."  *Id.* at 31 (referring to 371–73).  Dr. Fkiaras also observed that Diaz could "zip, button, and tie with bilateral hands without difficulty."  *Id.* at 373.  The ALJ found that taken together, these observations did not support Dr. Fkiaras' overall opinion that Diaz has a moderate to marked limitation with regard to "repetitive bending and squatting," and "repetitive heavy lifting, carrying, pushing, and pulling."  *Id.* at 374.  An ALJ has provided sufficient support to give a physician's opinion less weight where he observes that the conclusions are "inconsistent with the moderate

findings reflected in the [physician's] notes." *Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022) (ALJ satisfied supportability factor by "analyzing [physician assistant's] underlying treatment records against her opinion, and finding an incongruity"). Thus, the ALJ sufficiently supported his conclusion that Dr. Fkiaras' opinion was unpersuasive.[7]

### c.  The RFC is Also Supported by the Opinion of Dr. Kwock

In coming to his RFC determination, the ALJ relied heavily on the opinion of the testifying medical expert Dr. Kwock, an orthopedic expert. AR at 26–27, 31–32. Dr. Kwock concluded that Diaz had mild degenerative disc disease in the lumbar spine, "status post right carpal tunnel release in the bilateral upper extremities . . . [and] bilateral hands," and she was limited to light work, lifting and carrying 11–20 pounds occasionally, 0–10 pounds frequently, and nothing above 21 pounds. *Id.* at 64, 65. She can sit and walk for six hours in an eight-hour workday, and she is limited to frequent bilateral reaching. *Id.* at 65. Finally, she is able to be "functional in typing for approximately 2 hours per workday." *Id.* at 66.

---

[7] The ALJ observed that Dr. Fkiaras' evaluation did not take into consideration the fact that Diaz was still working at the time of the examination. AR at 31. However, Dr. Fkiaras' limitation on Diaz's ability to bend, squat, lift, carry, push, and pull does not appear to be inconsistent with the fact that Diaz was a paralegal and that by this time, as she testified, her employer accommodated her physical limitations by having other employees bring her file boxes so that she would not have to carry them. *Id.* at 53. Regardless, as discussed, the ALJ sufficiently supported his decision to accord Dr. Fkiaras' opinion less weight.

An ALJ may rely on a medical examiner if his opinion is "supported by the weight of the evidence." *Ritter v. Astrue*, 32 F. Supp. 3d 193, 206 (N.D.N.Y. 2012) (citation omitted). Here, the ALJ found that Dr. Kwock's opinion was "consistent and supported by the bulk of the evidence in the record." *Id.* at 31. For example, in deciding that the dexterity in her left hand is mildly limited and the dexterity in her right hand is unlimited, due to her carpal tunnel syndrome, Dr. Kwock cited to other physicians' findings in the medical record including: Dr. Fkiaras' observation that Diaz could "zip, button and tie with both hands without difficulty," (*id.* at 373); the "EMG studies" carried out by Dr. Lydia Rabinowich at Diplomate Neurology in July 2018, which demonstrated "mild abnormalities on the right hand" and "severe" carpal tunnel syndrome in her left hand, prior to her left hand surgery (*id.* 413–18); Dr. Alamgir Isani's independent examination report relating to Diaz's carpel tunnel, which recorded "mild partial disability" in her left hand and "no physical disability" in her right hand (*id.* at 466); and examination records from treating orthopedic surgeon Dr. Barry Katzman, which revealed "full range of motion of the fingers with grossly normal sensation to light touch" (*id.* at 469–70). Dr. Kwock explained at the hearing that on the whole, these medical records that he had examined led him to the conclusion that even with a limitation in dexterity in the left hand, Diaz can still perform a job at the light exertional level. *Id.* at 65. Dr. Kwock similarly supported his conclusion that her degenerative disc and joint disease was mild by examining the MRI report from March 2018 (*id.* at 366) and concluding that the findings were not "strikingly abnormal." *Id.* at 75. Finally, with regard to Diaz's

shoulder impingement, Dr. Kwock again reviewed the MRI report from May 2018
(*id.* at 367) and determined that any degenerative condition was a result of "wear
and tear" but that any problems "appear[] to have resolved." *Id.* at 76.
Furthermore, Dr. Kwock's opinion was also consistent with the non-medical
evidence that Diaz continued to work at a law firm as a paralegal in mid-2018,
despite reporting 10/10 pain in her left hand and 8/10 in her right. *Id.* at 25.
Therefore, because Dr. Kwock's conclusions were well-supported by clinical findings
and other evidence from the record, the ALJ did not err in relying on them. *See,
e.g., Sanders v. Comm'r of Soc Sec.*, No. 20-CV-2229 (ALC), 2021 WL 4176238, at
*16 (S.D.N.Y. Sept. 14, 2021) (ALJ did not err by relying on consultative examiner's
opinion when it was well-supported by clinical findings and totality of medical
evidence and other record evidence).

Although Dr. Kwock's opinion was not consistent with Dr. Fkiaras', the ALJ
is entitled to resolve inconsistencies. *See, e.g., Byrd v. Kijakazi*, No. 20-CV-4464
(JPO) (SLC), 2021 WL 5828021, at *18 (S.D.N.Y. Nov. 12, 2021) (no error in assessment
of medical opinion when ALJ relied on findings of consultative sources and explained
opinion was not consistent with other records), *adopted by* 2021 WL 5827636 (Dec. 7,
2021); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("we defer to the
Commissioner's resolution of conflicting evidence."). He did so here, and provided
his rationale as described above. Therefore, the Court finds no error in the ALJ's
evaluation of Dr. Fkiaras' and Dr. Kwock's opinions.

### 3.  The ALJ Properly Evaluated Diaz's Credibility

Finally, Diaz contends that the ALJ improperly evaluated her credibility

because he ignored her persistent efforts to obtain relief from pain and other

symptoms.  Pl. Mem. at 20.  Diaz's complaints included that she had pain and

numbness in her left hand, even after her release surgery, and chronic back pain.

AR at 57–58.  She argues that her numerous wrist injections, diagnostic imaging

examinations, continued physical therapy treatment on her wrists between January

2019 and August 2019, and regular visits to Quest Medical, Shein Orthopedics,

Montefiore Medical Center, Dr. Katzman, Interventional Physical Medicine and

Rehabilitation, and All Med Medical Group, support her subjective statements.  Pl.

Mem. at 20–21.  Diaz further argues that the ALJ failed to identify any evidence

inconsistent with her testimony related to her symptoms and limitations during the

time period in question.  Pl. Mem. at 21.

The ALJ properly followed the two-step process for evaluating the credibility

of Diaz's statements about her pain and functional limitations.  AR at 25.  After

concluding that Diaz suffered from a medically determinable impairment that could

reasonably be expected to produce her alleged symptoms, the ALJ addressed in

detail objective and non-objective medical evidence, including activities of daily

living, the effectiveness of pain medication, and her treatment regime, as

enumerated in 20 C.F.R. § 404.1529(c).  *Id.* at 25–30.  The ALJ provided sufficiently

specific reasons for his credibility determination.  First, the ALJ considered Diaz's

activities of daily living, which indicated that she was able to return to work after

33

her first wrist surgery, where she handled paper files, typed, and was able to carry

out other "fine and gross manipulative tasks that coincide with the office setting."

*Id.* at 30.  The ALJ remarked that she had retained manual dexterity on her left

wrist post-surgery, particularly her ability to "button, zip, and tie" according to

her consultative examiner and medical expert.  *Id.*  The ALJ properly relied on her

daily activities in weighing Diaz's credibility.  *See, e.g., Rivera v. Comm'r of Soc.*

*Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. Mar. 15, 2019) (collecting cases).

Second, the ALJ compared the medical records to Diaz's subjective

complaints.  While acknowledging that Diaz had some "positive findings on imaging

and exam," the ALJ noted that these findings were described as "mild to moderate."

AR at 29–30.  The ALJ also observed longitudinal improvement in Diaz's right wrist

and hand "to near resolution" as well as grip improvement in her left wrist.  *Id. a*t

30.  As to medications, the ALJ noted that Diaz testified that her pain medications

reduced her pain to zero out of ten in the right hand and three out of ten on the left

hand.  *Id.* at 27; *see also Franco v. Saul*, No. 16-CV-5695 (LMS), 2020 WL 4284157,

at *20 (S.D.N.Y. July 27, 2020) (ALJ's consideration of the alleviative effects of

medication and physical therapy sufficiently supports ALJ's determination of

claimant's credibility).

Taken together, the ALJ properly determined that the totality of the evidence

demonstrates that Diaz's alleged symptoms are not entirely consistent with the

evidence in the record.  In *Evans v. Colvin*, the Second Circuit found that the ALJ's

credibility determination was not supported by sufficient evidence, because the ALJ

34

had ignored diagnoses of chronic back pain, recommendations for steroid injections, and physical therapy. 649 F. App'x 35, 39–40 (2d Cir. 2016). That is not the case here. In this case, the ALJ did not ignore any information, but instead weighed the objective medical evidence against Diaz's subjective complaints. Accordingly, his finding with regard to Diaz's credibility was supported by sufficient evidence. *See, e.g., Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 200 (S.D.N.Y. 2018) (sufficient evidence supports ALJ's credibility determination, where the ALJ noted "largely mild" clinical findings "not consistent" with claimant's testified activities of daily living, functional reports, hospital records, and work status).

## III.   CONCLUSION

For the foregoing reasons, Diaz's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted. The Clerk is directed to mark the motion at Docket Number 16 as "denied," and the motion at Docket Number 24 as "granted," and enter judgment for the Commissioner.

**SO ORDERED.**

Dated: September 20, 2022
         New York, New York

_____
JAMES L. COTT
United States Magistrate Judge